## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

03 JAN 21  PM 3: 36

**DIMAS BARELA,**

     **Plaintiff,**

**vs.**                                             **No. CIV-01-1354-BB/DJS**

**CITY OF ALBUQUERQUE,**
**E.J. BALAND, ROB SIMMONS,**
**and MATTHEW McWETHY,**

     **Defendants.**

## DEFENDANTS' PROPOSED FINDINGS
## OF FACT AND CONCLUSIONS OF LAW

COME NOW the Defendants the City of Albuquerque, Rob Simmons, and Matthew McWethy (hereinafter "Defendants"), by and through their attorney, THE BAKER LAW FIRM (Jeffrey L. Baker, Esq.), and hereby provide this Court with their proposed Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1.     Plaintiff is a resident of Torrance County, State of New Mexico.  (Plaintiff's testimony).

2.     The City of Albuquerque is a municipality organized under the laws of the State of New Mexico.

3.     Officer E.J. Baland was at all times material hereto employed by the City of Albuquerque as a police officer.  (Baland's testimony).

4.     Officer Rob Simmons was at all times material hereto employed by the City of

Albuquerque as a police officer. (Simmons' testimony).

5.     Sergeant Matthew McWethy was at all times material hereto employed by the City of Albuquerque as a sergeant in the police department. (Sgt. McWethy's testimony).

6.     On December 11, 2000, Albuquerque Police Department ("APD") officers were conducting a "john" operation, whereby an undercover female police officer, E.J. Baland, posed as a prostitute. (Sgt. McWethy's testimony).

7.     The "john" operation was conducted in front of the Bow & Arrow motel, located on Central Avenue in Albuquerque, New Mexico. (Sgt. McWethy's testimony).

8.     APD, through its police surveillance team, was able to video and audio record the activities that occurred in front of the Bow & Arrow motel. (Sgt. McWethy's testimony).

9.     As part of the operation, APD rented some rooms at the Bow & Arrow motel. (Sgt. McWethy's testimony).

10.     APD also maintained a command post staging area at the Caravan, a night club with a large parking lot, located near the Bow & Arrow motel on East Central Avenue in Albuquerque, New Mexico. (Sgt. McWethy's testimony).

11.     APD planned that persons arrested in the "john" operation be taken from the arrest point to the staging area, where initial paperwork was completed and the arrestees' vehicles would be towed. (Sgt. McWethy's testimony).

12.     The arrestees would be transported from the staging area at the Caravan to the Bernalillo County Detention Center (BCDC). (Sgt. McWethy's testimony).

13.     On December 11, 2000, Plaintiff and his companion, John Garcia, drove into the parking lot of the Bow & Arrow Motel. (Plaintiff's testimony).

2

14.     Officer Baland, posing as a prostitute, approached Plaintiff's vehicle. (Plaintiff's testimony).

15.     Members of APD's surveillance team were able to see, hear and record what transpired between Officer Baland, Plaintiff and his companion. (Sgt. McWethy's testimony, APD videotape, Exhibit KK).

16.     Officer Baland engaged Plaintiff and his companion in a conversation during which Baland informed Plaintiff that she was "working." (APD videotape, Exhibit KK).

17.     Barela asked Officer Baland if she wanted a "date" with both Plaintiff and his companion. (APD videotape, Exhibit KK).

18.     Plaintiff told Officer Baland that he wanted sex. (APD videotape, Exhibit KK).

19.     Officer Baland informed Plaintiff that sex with both he and his companion would cost fifty dollars ($50.00). (APD videotape, Exhibit KK).

20.     Officer Baland told Plaintiff that she had a room at the Bow & Arrow motel, Room 18. (APD videotape, Exhibit KK).

21.     Plaintiff told Officer Baland that he was going to take a cruise, turn around and come right back. (APD videotape, Exhibit KK).

22.     Based on this encounter, Officer Baland gave the arrest signal. (APD videotape, Exhibit KK).

23.     Plaintiff drove out of the Bow & Arrow parking lot, traveling east on Central Avenue. (Plaintiff's testimony).

24.     Plaintiff was pulled over by APD undercover officers and placed under arrest at approximately 1:05 p.m. (Plaintiff's testimony, Police Report, Exhibit D).

3

25.     Plaintiff and his companion were both handcuffed with regular metal cuffs, placed in a police car, and driven to the Caravan.  (Plaintiff's testimony).

26.     Officer Baland caused to be filed a criminal complaint against Plaintiff charging Plaintiff with a violation of NMSA 1978, Section 30-9-3, "Patronizing prostitutes" (Plaintiff's testimony, Criminal Complaint, Exhibit H).

27.     When Plaintiff arrived at the Caravan, he was searched, questioned, and the original metal cuffs were replaced with plastic restraints. (Plaintiff's testimony).

28.     Plaintiff's companion, John Garcia, was subjected to the same procedure.  (John Garcia deposition)

29.     Officer Simmons was on duty at the Caravan to process arrestees, inventory property, and to transport arrestees to BCDC for processing at the jail.  (Simmons' testimony).

30.     Officer Simmons completed the inventory of Plaintiff's personal effects at approximately 1:35 p.m. (Simmons' testimony; Inventory form, Exhibit F

31.     At approximately the same time, an officer removed the metal handcuffs and placed Plaintiff in plastic restraints.  (Plaintiff's testimony).

32.     Plaintiff was then put into an APD patrol unit where he remained for approximately ten (10) minutes.  (Plaintiff's testimony).

33.     Thereafter, Plaintiff was put into a marked APD van and awaited transport to BCDC. (Plaintiff's testimony).

34.     Officer Simmons transported Plaintiff and three other arrestees to BCDC.  (Simmons' testimony).

35.     Plaintiff arrived at BCDC at approximately 3:30 p.m.  (BCDC video, Exhibit A; Pre-

4

booking sheet, Exhibit G; Unsecured Appearance Bond, Exhibit I; Metro Court Release Order, Exhibit J).

36.     Shortly after arriving at BCDC, at approximately 3:33 pm, Officer Simmons removed the plastic cuffs from Plaintiff.  (BCDC video, Exhibit A).

37.     Thereafter, at approximately 3:35 pm, Plaintiff was placed in double cuffs by Officer Simmons.  (BCDC Video, Exhibit A).

38.     Thereafter, Plaintiff began the booking process, which included being interviewed by paramedic Mike Trujillo, an employee of Prison Health Services.  (Mike Trujillo's testimony; Inmate Intake form, Exhibit K).

39.     Paramedic Mike Trujillo asked Plaintiff a series of medical questions, and conducted a visual exam. (Mike Trujillo's testimony; Inmate Intake form, Exhibit K; Mental Health Screening form, Exhibit L).

40.     At no time during the interview with Paramedic Mike Trujillo did plaintiff complain that his wrists, hands, or arms were hurting him. (Mike Trujillo's testimony;  Inmate Intake form, Exhibit K; Mental Health Screening form, Exhibit L).

41.     Plaintiff was booked into BCDC on the charge of "Patronizing prostitutes," a violation of NMSA §1978, 30-9-3, at about 3:35 pm (APD Pre-Booking Worksheet, stamped by Metro Court at 3:34 pm, exhibit G; and Criminal Complaint, stamped by Metro Court at 3:35 pm, exhibit H).

42.     Sergeant McWethy was the supervisor in charge of the "john" operation.  (Sgt. McWethy testimony).

5

43.     During the "john" operation, Sergeant McWethy traveled between the Bow & Arrow motel and the staging area located at the Caravan.  (Sgt. McWethy testimony).

44.     Plaintiff never saw Sergeant McWethy on December 11, 2000.   (Defendant's testimony).

45.     Plaintiff never talked with Sergeant McWethy on December 11, 2000.  (Defendant's testimony).

46.     Sergeant McWethy did not personally participate in Plaintiff's arrest.  (Sgt. McWethy testimony).

47.     Sergeant McWethy did not personally participate in handcuffing Plaintiff.   (Sgt. McWethy testimony).

48.     Sergeant McWethy did not personally participate in detaining Plaintiff.   (Sgt. McWethy testimony).

49.     Sergeant McWethy did not personally participate in transporting Plaintiff.   (Sgt. McWethy testimony).

50.     There is no evidence that the City of Albuquerque had a policy or custom amounting to deliberate indifference regarding the failure to train its employees regarding arrest or handcuffing suspected criminals.

51.     Plaintiff is claiming an ulnar neuropathy to his left elbow (Plaintiff's testimony). Plaintiff is not claiming he hit his elbow on anything (Plaintiff's testimony).  Ulnar neuropathy is almost always caused by a direct blow to the elbow (Barry Diskant, MD testimony; MEC report, Exhibit Q).

52.     Plaintiff is claiming an injury to his right shoulder (Plaintiff's testimony). Plaintiff's shoulder problem is caused by arthritis which is not related to the handcuffing (Barry Diskant, MD testimony; MEC report, Exhibit Q).

53.     Plaintiff is claiming a carpal tunnel injury to his right wrist as a result of the handcuffing (Plaintiff's testimony). Carpal tunnel syndrome is a condition which results when the median nerve does not work properly (Barry Diskant, M.D. testimony; George Swajian, D.O. testimony); Whereas there are reported cases in the medical literature that overtightened handcuffs can cause a compression neuropathy at the radial nerve, Plaintiff did not suffer an injury to the radial nerve (Dr. Diskant testimony).

54.     The fraction of all handcuff applications that result in compression neuropathy is quite small. (Dr. Diskant testimony; Dr. Swajian testimony).

55.     Plaintiff allowed his license as a journeyman plumber to lapse several months prior to December 11, 2000 (Plaintiff's testimony; letter from CLSI, exhibit S).

56.     Plaintiff did not work full time as a plumber in calendar year 2000 (Plaintiff's testimony).

57.     Plaintiff had no job related reason which required him to leave the job site and drive to Albuquerque on December 11, 2000 (Al Angowski testimony).

58.     Plaintiff obtained a plumbing job with Triple L Plumbing following his December 11, 2000 arrest, and performed his plumbing duties competently, but lost his plumbing job with Triple L Plumbing in the spring of 2001 because of issues unrelated to his claimed injuries (Mary Lucero testimony).

58.     Plaintiff lost his plumbing job with Don Coss in 1997, not because he found a better paying job, but because of his behavior towards female customers (Don Coss plumbing).

59.     Subsequent to December 11, 2000 Plaintiff obtained a commercial driver's license (Plaintiff's testimony; UNM Certificate of Completion, exhibit T).

60.     Subsequent to December 11, 2000 Plaintiff obtained employment as a truck driver for Swift Transportation Company and Albuquerque Moving & Storage (Plaintiff's testimony; exhibits W, X, and Z).

61.     Subsequent to December 11, 2000 Plaintiff took and passed two different Department of Transportation physical exams (Plaintiff's testimony; Swift Transportation file, exhibit X; and Albuquerque Moving & Storage application, exhibit Z).

62.     The City of Albuquerque Police Department has a handcuffing policy (exhibits EE and FF), and trains its officers in handcuffing techniques (testimony of Baland, Simmons, and McWethy).

## CONCLUSIONS OF LAW

1.     This Court has jurisdiction over the parties and the subject matter of this lawsuit, and venue is proper in the United States District Court for the District of New Mexico.

2.     This Court has supplemental jurisdiction over Plaintiff's state law claims.

3.     Defendants are "persons" within the meaning of 42 U.S.C. §1983.

4.     Defendants acted under color of law and their respective acts and omissions constitute state action under 42 U.S.C. §1983.

5.      The City of Albuquerque is a municipality organized under the laws of the State of New Mexico and is subject to the provisions of the New Mexico Tort Claims Act, NMSA 1978, §§41-4-1, et seq.

6.      Defendants Simmons and McWethy were, at all times material herein, law enforcement officers employed by the City of Albuquerque and are subject to the provisions of the New Mexico Tort Claims Act, §§41-4-1, et seq.

7.      The Fourth Amendment to the United States Constitution provides that:

>       The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

8.      Plaintiff was charged with violating NMSA 1978, Section 30-9-3, Patronizing prostitutes which provides that:

Patronizing prostitutes consists of:

B.      knowingly hiring or offering to hire a prostitute or one believed by the offeror to be a prostitute, to engage in a sexual act with the actor or another.

9.      Probable cause existed for Officer Baland to give the arrest signal thereby alerting officers to stop, detain, and arrest Plaintiff.  See, Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995)("Probable cause exists if the facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.")

10.     A police officer's placement of handcuffs on Plaintiff did not constitute excessive force.  See, Atwater v. City of Lago Vista, 532 U.S. 318, 121 S. Ct. 1536, 149 L.Ed.2d 549

9

(2001)(use of handcuffs in an arrest for a misdemeanor traffic violation did not constitute excessive force in violation of the Fourth Amendment); Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989)(Fourth Amendment claims of excessive force are analyzed using an objective standard giving the facts and circumstances surrounding the arrest).

11.     The failure to loosen handcuffs does not give rise to a constitutional deprivation. See, Hannula v. City of Lakewood, 907 F.2d 129, 132 (10th Cir. 1990).

12.     Sergeant McWethy did not personally participate in Plaintiff's arrest, detention, or handcuffing, thereby negating Plaintiff's constitutional claims against McWethy, individually. See, Bennett v. Passaic, 545 F.2d 1260, 1262-63 (10th Cir. 1976)(to succeed on a supervisory claim, plaintiff must show that the supervisor personally participated in the alleged violation); Meade v. Grubbs, 841 F.2d 1512, 1527-29 (10th Cir. 1998)(plaintiff must allege facts to show defendant's participation or acquiescence in the offensive behavior, or demonstrate by factual averments an affirmative link between the "incident or purported misconduct" and the adoption of a plan or policy showing authorization or approval of the misconduct).

13.     Officers Simmons and Sergeant McWethy are entitled to qualified immunity on all of Plaintiff's constitutional claims. See, Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001).

14.     The City of Albuquerque is entitled to judgment in its favor on Plaintiff's constitutional claims. See, City of Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989)(plaintiff must show that a municipality was deliberately indifferent in its failure to train law enforcement officers).

15.    A municipality can be held liable under Section 1983 only for its own unconstitutional or illegal policies, and not for the tortous acts of its employees.  <u>Barney v. Pulsipher</u>, 143 F. 3d 1299, 1307 (10th Cir. 1998).

16.    To establish the requisite deliberate indifference, the plaintiff must show that the municipality had actual or constructive notice that its failure to act was substantially certain to result in a constitutional violation, and that the municipality consciously or deliberately chose to disregard the risk of harm.  <u>Pulsipher</u>, 143 F. 3d at 1307.

17.    With respect to supervisory liability on the part of a municipality, Plaintiff carries the additional burden of showing an affirmative link between the constitutional deprivation and either the supervisors personal participation, the supervisor's exercise of control or direction, or his failure to supervise.  <u>Butler v. City of Norman</u>, 992 F. 2d 1053, 1055 (10th Cir. 1993).

18.    The City of Albuquerque cannot be found liable on Plaintiff's constitutional claims under a theory of <i>respondeat superior</i>.  <u>See</u>, <u>City of Canton v. Harris</u>, <u>supra</u>.

19.    NMSA 1978, Section 41-4-12, waives governmental immunity for certain intentional torts, including false arrest, false imprisonment, and battery committed by law enforcement officers acting within the scope of their duties.

20.    Officer Baland had the lawful authority to arrest Plaintiff.

21.    Officer Simmons (or another officer) had the lawful authority to detain Plaintiff and place Plaintiff in handcuffs.

22.    This lawful authority negates Plaintiff's state tort claims brought pursuant to NMSA 1978, Section 41-4-12.  <u>See</u>, <u>Diaz v. Lockheed Electronics</u>, 95 N.M. 28, 618 P.2d 372 (1980); <u>Martinez v. Sears, Roebuck and Company</u>, 81 N.M. 371, 467 P.2d 37, 39 (Ct.App.), <u>cert.</u> <u>denied</u>,

81 N.M. 425 (1970).

23.     Under New Mexico law, the mere happening of an accident is not evidence that any person was negligent. See, SCRA 13-1616; Anaya v. Tarradie, 70 N.M. 8, 369 P.2d 41 (1962).

24.     Under New Mexico law, simple negligence in the performance of a law enforcement officer's duty does not amount to commission of one of the torts listed in NMSA 1978, Section 41-4-12. See, Bober v. New Mexico State Fair, 111 N.M. 644, 808 P.2d 614 (1981).

25.     Failure to find that a law enforcement officer committed a negligent act for which immunity has been waived under the New Mexico Tort Claims Act negates any claim for negligent supervision and/or training against supervisory officers, such as McWethy and the City of Albuquerque. See, McDermitt v. Corrections Corporation of America, 112 N.M. 247, 814 P.2d 115 (Ct.App. 1991)(immunity under the Tort Claims Act is not waived for negligent training and supervision standing alone; such negligence must cause a tort specified in the Tort Claims Act or a violation of rights).

26.     Punitive damages shall not be awarded as no showing has been made entitling Plaintiff to these damages.

27.     Plaintiff is not entitled to attorney's fees.

28.     Defendants are entitled to their costs in defending this action.

12

Respectfully submitted,

THE BAKER LAW FIRM

JEFFREY L. BAKER
Attorney for Defendants
20 First Plaza NW
Suite 402
Albuquerque, New Mexico 87102
(505) 247-1855

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was mailed to Plaintiff's counsel of record, David L. Plotsky, Esq., Plotsky & Dougherty, P.C., 122 Girard SE, Albuquerque, New Mexico on this __2 1__ day of January 2003.

Jeffrey L. Baker

13