UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DIMAS BARELA,

    Plaintiff,

vs.                          CIV 01-1354 BB/DJS

CITY OF ALBUQUERQUE, et al.,

    Defendants.

## PLAINTIFF'S SUPPLEMENTAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

COMES NOW, PLAINTIFF, and submits these additional Proposed Findings of Fact and Conclusions of Law, based on testimony elicited at trial:

### FINDINGS OF FACT

1. Although Defendant Simmons testified he could not remember Barela complaining about being in pain during his two-plus hour restraint, the testimony of Michael Winchell and John Garcia persuades the court that Barela had been complaining about the handcuffs while he was in the restraints at the Caravan East staging area.

2. The court reasonably infers that after Simmons took a personal inventory of the last of his four prisoners, (Victor Otero) at 1:48 P.M., Exhibit 17, by which time Barela had already been in the plastic restraints for approximately forty minutes, rather than, at that time, transporting his prisoners to the jail, *without delay*, as required in the Albuquerque Police Department Standard Operating Procedures, No 2-19, ex. 35, he chose instead to eat pizza with his fellow officers. The court finds this to be



unreasonable, and in light of Barela's complaints of pain, deliberately indifferent to his welfare.

3.     The court finds the testimony of Sgt. Marc McWethy to be, for the most part, incredible. McWethy testified he has held prisoners in handcuff restraint for up to eight hours. If indeed this were so, it would be extremely inhumane unless the circumstances were far different than those alleged by Barela. McWethey also testified that soft drinks were provided to the prisoners arrested and detained at the staging area, during the December 11, 2000 "John Operation"; however his testimony was also that the prisoners were supposed to be, and were indeed, handcuffed with their hands behind their backs throughout their detention prior to being transported to the jail. This would make their ability to drink sodas virtually impossible, make this highly unlikely. McWethy also testified the Albuquerque Police Department does not employ single loop flex cuffs, when, in fact, the A.P.D. Academy Training material Ex. 34, indicates it does.

4.     McWethy did, however, testify that all the task force officers, presumably including Simmons, ate lunch at the same time, and that he (McWethy) provided pizza to them at the staging area. That, along with the testimony of Simmons, admitting he did eat pizza, at some point, and the testimony of Winchell and Garcia, which was that Simmons ate pizza during the time they were restrained in the van, while Barela was complaining of being in pain, allows the court to reasonably conclude that Simmons ate lunch from approximately 1:50 to 3:15 PM, when the van left for the jail. The court finds this to be unreasonable, especially in light of Barela's complaints.

leaving the medical room while a prisoner was present, when in fact the booking video shows Trujillo leaving Barela alone in the room for thirty seconds, (Stipulated time line, 15:49:50 - 15:50:20) and the fact that Barela's examination took only half as long as Trujillo testified a typical examination should take. Also, the medical intake forms for the other three prisoners indicate Trujillo examined Otero, Winchell and Garcia all within five minutes of each other, [1](1555, 1555, 1600) when it should have taken him closer to fifteen minutes to do so.

        Additionally, a) the booking video, Ex. 3, indicates Simmons had a great deal of difficulty in cutting the restraints from Barela's wrist, because they were swollen against the cuffs; b) Jennifer Barela's testimony about the appearance of Barela's hands (being red and swollen) when he got home the following morning; and c) Barela's December 14, 2000 visit to the Hope Medical Center, and the clinical finding of numbness in both hands further persuades the court that Barela's hands were bruised and swollen when he was booked into the jail, and that Trujillo's examination was hurried and he simply did not note the bruising or swelling.

8.      The booking video (Ex. 3), aided by reference to the Stipulated Time Line, provided by counsel at the commencement of the trial, (and attached hereto), reveals Barela as very agitated, anxious and in pain when he arrived at the jail. (15:29:28-15:30:32). He attempted to get a jail guard to look at his hands within a minute of

---

[1] These three medical intake forms, attached hereto, were displayed and discussed during Michael Trujillo's cross-examination. They have since been moved into evidence pursuant to a stipulation entered into between the parties. Were the Court to accept these as exhibits at this time, they would be Plaintiff's exhibits 39, 40 and 41.

entering the booking area. (15:31:32). It took Simmons over two minutes to cut the cuffs, (15:32:51-15:35:03), and he appeared to be having a difficult time squeezing the scissors between the cuffs and Barela's wrists which is not a normal occurrence, that is, it took Simmons twice as long to cut Barela's two plastic cuffs than it took another jailer to cut all six plastic cuffs off the other three prisoners (15:36:59-15:37:57).

Simmons cut Barela's left cuff first, (15:34:61) and while Barela almost collapses, the tag end of a single loop cuff appears to be hung up on Barela's sleeve, which moments later falls off, as Barela attempts to lift his left arm on to the counter. Only then does Simmons begin to cut the right cuff.

This final sequence of events allows the court to reasonably conclude that Barela was restrained with two single loop cuffs, as he so testified. This further corroborates Barela's claim that the backs of his hands were actually touching, making the handcuffing more painful and more injurious and hence, unreasonable. After the cuffs are finally removed (15:39:16) Barela appears to become less agitated, but appears to be continually rubbing his wrists, as someone would who is having pain or discomfort.

9. Plaintiff's medical bills, have totaled $12,955.00 thus far. These medical treatments and these costs are both reasonable and necessary.

10. Plaintiff's future medical bills will total $15,200, for a surgery to his right wrist, and a surgery to his left shoulder, and appropriate therapies.

11. While both Dr. David Bernstein, Plaintiff's treating surgeon, and Dr. George Swajian, Plaintiff's forensic orthopedist, opine that Plaintiff should be able to regain full strength in both hands and arms, and will be able to eventually return to heavy work as a

plumber, when exactly this may occur is speculative. Were the court to assume that Barela successfully recovers from both these upcoming surgeries, and continues with his successful recovery from his left elbow surgery, it could still be up to two years before he could return to such work, which will have rendered him virtually totally disabled for four years or more.

## CONCLUSIONS OF LAW

1. The case cited by the Defendant at the close of the trial, *Rodriquez vs. Farrel*, 280 F.3d 1341 (11th Cir., 2002) is cited, and distinguished, at page 11 of Plaintiff's trial brief, Doc 95.

2. The fact that Defendant Simmons testified that he had may have had no ill will towards Barela is immaterial and irrelevant in a Fourth Amendment reasonableness inquiry, as expressed in *Graham v. Conner*, 490 U.S. 386.

Respectfully submitted,

David L. Plotsky
Plotsky and Dougherty, P.C.
Attorneys for Plaintiff
122 Girard SE
Albuquerque, New Mexico 87106
(505) 268-0095

I certify a true and
correct copy of the
foregoing was mailed
to opposing counsel
this 14th day of February, 2003.

David L. Plotsky

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DIMAS BARELA,

    Plaintiff,

vs.                                                   CIV-01-1354 BB/DJS

CITY OF ALBUQUERQUE, et al.

    Defendant.

STIPULATED TIMELINE REGARDING
BERNALILLO COUNTY DETENTION CENTER
VIDEO OF BOOKING PROCEDURES, DECEMBER 11, 2000
3:30 P.M. TO 4:22 P.M.

15:29:28 Dimas first to door
15:29:47 Outside door opens
15:29:57 All five in sally port
15:30:32 Inner door opens
15:31:32 Tries to get guard's attention
15:31:44 Dimas talks to Simmons
15:32:14 Trujillo walks by
15:32:48 Simmons tells Dimas to stand by counter
15:32:51 Simmons starts working on cuffs
15:32:56 Prisoners walk by
15:33:21 Prisoners walk by; Simmons working on cuffs as
15:34:06 left cuff cut, hand drops
15:35:03 Right cuff cut
15:35:40 Re-cuffed
15:35:50 Dimas back against wall
15:36:50 All 4 facing wall
15:36:59 Jailer starts cutting others' cuffs
15:37:57 Jailer finishes cutting others' cuffs
15:38:05 Jailer starts unlocking Dimas' cuffs
15:38:41 Jailer done unlocking Dimas' cuffs
15:38:46 Jailer looking at Dimas' hands
15:38:53 Jailer looking around for Simmons
15:39:01 Jailer calls Simmons over
15:39:06 Garcia looks over
15:39:08 at Simmons and another jailer looks at Dimas' hands
15:39:16 Simmons walks away
15:39:25 Dimas takes boots off
15:41:20 Otero searched by jailer
15:41:35 Plaintiff's hat taken off
15:42:36 Dimas searched by jailer
15:43:50 Dimas done being searched; rubbing hands
15:45:43 Dimas puts coat back on
15:46:33 Simmons takes Otero's hand-Dimas on con of frame
15:46:50 Otero puts coat on
15:47:37 Dimas into med
15:49:50 Trujillo to counter

15:50:20 Trujillo back to medical
15:50:41 Dimas walks back towards counter-coat on
15:51:10 Trujillo back to counter
15:51:23 Trujillo back to medical
15:51:35 Dimas back against wall, relaxed, rubbing hands, not pacing
15:53:02 Garcia back at wall
15:53:12 Dimas talking to Garcia
15:54:00 Dimas holding hand to check, looking at hand
15:54:20 Dimas to cell
15:56:05 Otero back at wall
15:56:24 Trujillo walks out and back
15:56:42 Winchell at wall
15:57:02 Dimas in cell
16:03:53 Trujillo at window
16:06:21 Simmons leaves jail
16:11:11 Dimas out of holding cell
16:11:25 Dimas in screen 2
16:22:50 Dimas back in holding cell

Respectfully submitted,

_____
David L. Plotsky,
Plotsky and Dougherty, P.C.
Counsel for Plaintiff

And

_____
Jeffery L. Baker
Baker Law Firm
Counsel for Defendant